# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROCKET MORTGAGE, LLC F/K/A
QUICKEN LOANS, LLC F/K/A
QUICKEN LOANS, INC.,
a Michigan limited liability company,

      Plaintiff,

v.

SHARP LOAN, INC. F/K/A
STERLING HOMEX INC.,
a California corporation, and
REYNALDO REYES, an individual,

      Defendants.

Case No.
Hon.
Magistrate:

_____

## **COMPLAINT**

NOW COMES Plaintiff, ROCKET MORTGAGE, LLC F/K/A QUICKEN LOANS, LLC F/K/A QUICKEN LOANS INC.[1] ("Rocket Mortgage" or "Plaintiff"), by and through its undersigned counsel, MADDIN HAUSER ROTH & HELLER, P.C., and for its Complaint against SHARP LOAN, INC. F/K/A STERLING HOMEX INC.[2] ("Broker") and REYNALDO REYES ("Reyes") (Broker and Reyes are collectively referred to as "Defendants"), states as follows:

---

[1] Quicken Loans Inc. converted to Quicken Loans, LLC on 4/5/2020. Quicken Loans, LLC then changed its name to Rocket Mortgage, LLC effective 7/31/2021.

[2] Sterling Homex Inc. changed its name to Sharp Loan, Inc. effective 3/27/20.

## PARTIES, JURISDICTION AND VENUE

1. Rocket Mortgage is a Michigan limited liability company. Rocket Mortgage's sole member is Rocket Limited Partnership, a Michigan limited partnership. Rocket Limited Partnership's only partners are Rocket GP, LLC, a Michigan limited liability company, and Rocket LP, LLC, a Michigan limited liability company. Rocket Companies, Inc., a Delaware corporation with its principal place of business located in Detroit, Michigan, is the sole member of both Rocket GP, LLC and of Rocket LP, LLC.  Therefore, Rocket Mortgage is deemed a citizen of Delaware and Michigan, only, for purposes of diversity jurisdiction.

2. Broker is a California corporation with a principal place of business in California. Therefore, Broker is deemed a citizen of California, only, for purposes of diversity jurisdiction.

3. Defendant Reyes is an individual who, upon information and belief, is domiciled in California. Therefore, Reyes is deemed a citizen of California, only, for purposes of diversity jurisdiction.

4. The subject Broker Agreement dated August 23, 2018 between Broker and Rocket Mortgage (**Exhibit A**, "the Agreement") contains the following provision:

> **10.12. GOVERNING LAW; JURISDICTION**. This Agreement shall be governed by, and construed and enforced in accordance with, applicable federal law and the laws of the State of Michigan. Any action arising out of this Agreement or the transactions contemplated hereby

2

may be instituted in any state or federal court located in the State of Michigan. Further, each party expressly waives any objection which such party may have to the laying of venue of any such action, and irrevocably submits to the jurisdiction of any such court and agrees to be fully bound by any final unappealed decision of those courts.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different States and the amount in controversy exceeds $75,000.00.

6. This Court has general personal jurisdiction over Defendants because they have consented to the jurisdiction of this Court by virtue of Section 10.12 of the Agreement. Mich. Comp. Laws § 600.711(2).

7. This Court also has specific personal jurisdiction over Defendants because they transacted business in Michigan in connection with the transactions described in this Complaint, caused acts to be done and consequences to occur in Michigan resulting in an action for tort, and otherwise have constitutionally sufficient minimum contacts with the State of Michigan. Mich. Comp. Laws § 600.715(1)-(2).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Eastern District of Michigan is a judicial district in which a substantial part of the events or omissions giving rise to Rocket Mortgage's claim occurred and by virtue of Section 10.12 of the Agreement.

## GENERAL ALLEGATIONS

9. On August 23, 2018, Rocket Mortgage and Broker entered into the valid and binding Agreement pursuant to which Broker agreed to "perform origination services and submit loan application packages" to Rocket Mortgage for loans secured by residential real property, from time to time. (**Exhibit A**, Agreement, Recitals p. 1).

10. Reyes signed the Agreement on behalf of Broker. **Exhibit A**, at p. 19.

11. Pursuant to the Agreement, Broker submitted the following loan applications ("the Applications") to Rocket Mortgage and, in reliance on the loan applications, Rocket Mortgage funded the following three loans (collectively, "the Loans"):

| Loan Number | Closing Date | Original Loan Amount |
|---|---|---|
| xxxxxx4978 | 3/17/2020 | $290,500.00 |
| xxxxxx4108 | 3/17/2020 | $330,000.00 |
| xxxxxx5940 | 3/17/2020 | $301,000.00 |

12. In the Agreement, Broker agreed that "Each Application submitted to Lender shall be subject to strict compliance with (i) the terms and conditions contained in this Agreement, (ii) the Broker Guide, and (iii) any other

4

communications, announcements or guidelines provided by Lender to Broker from time to time." **Exhibit A**, Section 2.2.

13. Section 2.3 of the Agreement placed a number of origination-related responsibilities on Broker, including but not limited to the following:

> **2.3. PERFORMANCE OF BROKER SERVICES.** In addition to taking the information from Applicant, completing and compiling the Application, and providing and explaining the broker disclosure(s), Broker shall, for every loan, perform services, including but not limited to the following:
>
> (a) analyzing the Applicant's income and debt and pre-qualifying the prospective Applicant to determine the maximum loan amount that the prospective Applicant can afford;

\*\*\*

> (c) collecting financial information (e.g., tax returns, bank statements) and other related documents that are part of the application process;
>
> (d) initiating/ordering verifications of employment (VOEs) and verifications of deposits (VODs)[.]

14. The Agreement further required that Broker "shall be responsible for all communications with Applicants[,]" and shall conduct its business in conformance with all applicable laws. **Exhibit A**, Sections 2.5 and 4.4.

15. As to each individual Loan, Broker further represented and warranted that it would not submit any Applications containing false, misrepresented, inaccurate, or otherwise fraudulent information, including in the below-referenced sections:

5

**4.8. NO UNTRUE OR MISLEADING STATEMENTS.** No representation, warranty or written statement made by Broker to Lender in this Agreement or in any schedule, written statement or document furnished to Lender in connection with the transactions contemplated hereby contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading.

**5.3 FRAUD.** Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the Applicant, or any other third party retained by or controlled by Broker or Applicant (other than affiliates of Lender) involved in the origination of the mortgage loan. Broker understands and agrees that in the event Lender reasonably believes misrepresentations or fraud generated either through the Broker (by any Applicant or third party), by the Broker, or with the Broker's knowledge exist in an Application or any related documents, Lender may report such misrepresentation or fraud to the appropriate state and federal regulatory authorities, law enforcement agencies, and fraud databases. Broker acknowledges the importance of Lender's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in connection with Lender's disclosure of such information.

**5.4. FACTUAL DISCLOSURE.** All facts relating to any Application and/or related mortgage loan transaction which are known or should be known to Broker which may adversely affect the value of the mortgaged property, the credit, character or capacity of the Applicant, the validity of the mortgage, or any other aspect of the transaction have been disclosed in writing to Lender.

(collectively, "the Loan-Level Representations and Warranties").

16. The Agreement clearly and unambiguously states, including by virtue of the above Loan-Level Representations and Warranties, that Broker was responsible for any misrepresentations or other fraudulent conduct in connection

6

with an Application, regardless of whether the fraud was committed by the Broker, the Applicant, and/or a third party employed, retained or controlled by Broker.

17. The Agreement further required Broker to perform its obligations to Rocket Mortgage in good faith: "The parties hereto agree to deal in good faith with each other at all times." **Exhibit A**, Section 10.15.

18. Broker failed to perform its services under the Agreement in good faith and in conformance with applicable laws and materially breached the aforementioned contractual obligations and duties, including but not limited to the Loan Level Representations and Warranties.

19. More specifically, Rocket Mortgage and its investors discovered after the closing of the Loans that Broker, with full knowledge and active participation by Reyes, submitted Loan applications that misrepresented the borrowers' debts and/or fraudulently concealed debts and supported these fraudulent loan Applications with statements and/or documents that were misleading, untrue, fabricated, altered and otherwise fraudulent.

20. For example, Broker, with the full knowledge, approval, and active participation of Reyes, submitted fabricated, misleading, and/or untrue Applications for the purpose of misrepresenting the borrowers' debts and/or concealing the existence of the borrowers' debts.

4915-0807-8733, v. 1

21. Specifically, it was determined that the borrowers, with the full knowledge, approval, and active participation of Reyes, obtained five undisclosed mortgage loans with United Wholesale Mortgage, LLC (the "UWM Loans"), that these undisclosed mortgage loans were originated between March 3, 2020 and March 10, 2020, prior to the March 17, 2020 closing date of the Loans, that Broker acted as the broker for the UWM Loans, and that, with the full knowledge, approval, and active participation of Reyes, neither the borrowers nor the Broker disclosed these UWM Loans in the Applications for the Loans prior to the closing of the Loans.

22. Broker, with the full knowledge, approval, and active participation of Reyes, engaged in this conduct knowingly, willfully, and/or with specific and malicious intent to defraud Rocket Mortgage and induce it to fund the Loans or, in the alternative, Broker acted recklessly, negligently, and/or submitted false, misrepresented, untrue, misleading, and otherwise fraudulent information to Rocket Mortgage.

23. Reyes personally and actively participated in this fraud scheme and therefore has personal liability to Rocket Mortgage in tort and otherwise.

24. Defendants' acts and omissions as described herein were done in bad faith.

25. Broker's material breaches of the Agreement and breach of the duty of good faith and fair dealing it owed to Rocket Mortgage entitle Rocket Mortgage to

8

exercise its rights and remedies under the Agreement, which include the right to force Broker to repurchase a non-conforming Loan at the "Repurchase Price" (as that term is defined in Section 6 of the Agreement) and for all other damages and other relief Rocket Mortgage is entitled to under the Agreement and applicable law.

26. Section 8 of the Agreement further requires that Broker indemnify and hold Rocket Mortgage harmless in connection with its material breaches of the Agreement, including but not limited to attorney fees that Rocket Mortgage has incurred and will continue to incur.

27. The Agreement, by virtue of Section 8 and otherwise, constitutes a valid and binding express contract of indemnity between Rocket Mortgage and Broker.

28. Rocket Mortgage previously has provided written notice to Broker of its breaches and demanded that Broker repurchase the affected Loans and otherwise indemnify and hold Rocket Mortgage harmless against all losses, damages, and other liabilities.

29. Despite that notice, Broker has willfully failed and/or refused to honor the terms of the Agreement.

30. Defendants' acts and omissions, violations of duty, material breaches of the Agreement, and otherwise fraudulent conduct have proximately caused Rocket Mortgage damages, including but not limited to interfering with Rocket Mortgage's relationships with third-party investors, forcing Rocket Mortgage to

repurchase all of the Loans due to demands by the Loans' investors, paying Broker compensation on Loans that were originated in violation of the Agreement, and/or forcing Rocket Mortgage to suffer losses in the amount of $194,183.67 on re-sales of the Loans on the secondary market due to the defects created by Defendants' material breaches of contract and fraud.

31. Defendants' conduct has caused Rocket Mortgage to suffer a loss in reputation as a skilled company and, in light of the clear, malicious, and willful fraud that occurred in this case, exemplary damages are appropriate against the Defendants.

32. Rocket Mortgage, at all times, complied with the terms of the Agreement and otherwise acted in good faith and in a commercially reasonable manner, including to mitigate its damages.

## **COUNT I - BREACH OF CONTRACT BY BROKER**

33. Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

34. The Agreement is a valid and binding contract between Rocket Mortgage and Broker.

35. Rocket Mortgage fully and adequately performed its obligations under the Agreement.

36. Broker materially breached its obligations under the Agreement as set forth herein, including but not limited to by breaching the Loan-Level Representations and Warranties, by submitting Applications to Rocket Mortgage that misrepresented the Applicant's debts and concealed the existence of the UWM Loans, that were misleading, untrue, fabricated, altered, and otherwise fraudulent.

37. Rocket Mortgage has given Broker written notice of its material breaches in accordance with the Agreement, but Broker has failed and/or refused to remedy same or to honor its obligations to repurchase the Loans and indemnify and hold Rocket Mortgage harmless against its losses.

38. As a direct and proximate result of Broker's breaches, Rocket Mortgage has suffered and continues to suffer damages.

WHEREFORE, Rocket Mortgage respectfully requests judgment against Broker on Count I of this Complaint in the amount of $194,183.67, together with interest, costs, exemplary damages, and attorney fees and all other relief in Rocket Mortgage's favor that the Court deems just and equitable under the circumstances.

### COUNT II – BREACH OF EXPRESS INDEMNITY AGREEMENT BY BROKER

39. Rocket Mortgage incorporates all previous allegations as if fully restated herein.

40. Rocket Mortgage and Broker entered into a valid and binding indemnification agreement.

11

41. Broker agreed to indemnify and hold Rocket Mortgage harmless against, among other things, damages sustained by Rocket Mortgage due to Broker's breaches of the Agreement and other acts, events, and occurrences, as more fully set forth in Section 8 of the Agreement.

42. By committing material breaches and violating its duty of good faith and fair dealing in connection with its performance under the Agreement, and by failing to indemnify and hold Rocket Mortgage harmless for damages sustained despite demand, Broker materially breached the express indemnification agreement.

43. As a direct and proximate result of Broker's material breaches of the express indemnification agreement, Rocket Mortgage has suffered and continues to suffer damages.

WHEREFORE, Rocket Mortgage respectfully requests judgment against Broker on Count II of this Complaint in the amount of $194,183.67, together with interest, costs, exemplary damages, and attorney fees and all other relief in Rocket Mortgage's favor that the Court deems just and equitable under the circumstances.

**COUNT III – FRAUD AGAINST DEFENDANT REYES**

44. Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

45. With respect to each of the Loans, Reyes committed fraud including by, on the dates and at the time the Applications and other documents relating to the

4915-0807-8733, v. 1

Loans were submitted, maliciously, deliberately, recklessly, and/or willfully making false material representations of fact with respect to, among other things, the borrowers' debts.

46. Reyes made these misrepresentations with knowledge of their falsity, or recklessly without knowledge of their truth, as positive assertions, and with specific intent that Rocket Mortgage would rely upon said misrepresentations by funding the Loans.

47. Rocket Mortgage reasonably and justifiably relied upon these misrepresentations to its detriment, including by funding the Loans.

48. Reyes's misrepresentations have proximately caused Rocket Mortgage to sustain and to continue to sustain damages.

WHEREFORE, Rocket Mortgage respectfully requests judgment against Reyes on Count III of this Complaint in the amount of $194,183.67, together with interest, costs, exemplary damages, and attorney fees and all other relief in Rocket Mortgage's favor that the Court deems just and equitable under the circumstances.

4915-0807-8733, v. 1

        Respectfully submitted,

        MADDIN HAUSER ROTH & HELLER, P.C.

        By: */s/ Kevin C. Majewski*
            Deborah S. Lapin (P59027)
            Kevin C. Majewski (P79292)
            One Towne Square, Fifth Floor
            Southfield, MI 48076
            (248) 354-4030
            dlapin@maddinhauser.com
            kmajewski@maddinhauser.com

Dated: February 3, 2026        *Attorneys for Rocket Mortgage, LLC*