# EXHIBIT A

# BROKER AGREEMENT

THIS AGREEMENT (the "Agreement") is entered into as of _____Aug 23, 2018_____ ,
by and between QUICKEN LOANS INC., a Michigan corporation ("Lender"), having a principal office
at 1050 Woodward Avenue, Detroit, Michigan 48226, and the undersigned Sterling Homex Inc.
("Broker") having a principal office at 625 The City Dr S Ste 400   Orange   CA   92868 .

## RECITALS

Lender is in the business of, among other things, originating, purchasing and selling residential mortgage
loans secured by a first or subordinate lien on a 1-4 family dwelling;

Broker is in the business of, among other things, aiding and assisting applicants in obtaining residential
first and second mortgage loan financing from lenders; and

The parties to this Agreement wish to establish a non-exclusive relationship whereby Broker  will
perform origination services and submit loan application packages ("Applications") for first and second
lien 1-4 family residential mortgage financing on behalf of Broker's customers ("Applicants") to Lender
for loan approval determination and possible funding by Lender, and upon such terms and conditions as
set forth in this Agreement and in Lender's product guidelines, rate sheets and other written manuals
and publications, as amended from time to time, including such publications, bulletins and information
available through Lender's Website (collectively the "Broker Guide") which  is made a part of this
Agreement and incorporated herein as if set forth at length.

THEREFORE, in consideration of the mutual covenants and agreements herein contained, and other
good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the
parties hereby agree as follows:

**1.      ELIGIBLE LOANS; PRICING**

**1.1. MORTGAGE LOAN PROGRAMS**. Lender may from time to time distribute to Broker information with
respect to the types of mortgage loan programs it is offering ("Loan Programs") along with the methods
by which Applications for such Loan Programs may be transmitted. Lender will accept only those
Applications eligible for the Loan Programs offered by Lender. Broker will be entitled to have
Applications processed only upon submission to Lender of such additional information and documents
as required by Lender. Broker acknowledges that Lender reserves the right to alter, add, or delete Loan
Programs from time to time and Broker accepts responsibility for knowing which Loan Programs are
offered by Lender at any given time. Broker shall be responsible for assuring that each Application
submitted complies with all the terms and conditions of the applicable Loan Program at the time Broker
submits the Application to the Lender.

**1.2. MORTGAGE LOAN PRICING**. Lender may issue to Broker on a periodic basis pricing information
("Pricing Sheet") applicable to Loan Programs it offers. Each Pricing Sheet is subject to change without
notice. Broker shall comply with the guidelines contained in the Pricing Sheet and Broker Guide,

Rev 1/2/2018

specifically including, but not limited to, the Wholesale Pricing Manual concerning documentation, interest rates and lock-ins which apply to the particular Loan Program offered by Lender.

**2.     DUTIES OF BROKER**

**2.1. TAKING OF APPLICATIONS/ DISCLOSURES**. Broker shall take applications for the Loan Programs at its offices in its own name through its employees (each of whom shall be engaged by Broker on a W-2 basis). Broker shall provide to each person or persons who submits an application that is to be submitted to Lender, contemporaneously with the taking of the application, all applicable broker disclosure(s) that comply with all applicable laws. Broker may not submit third party originations to Lender under this Agreement.

**2.2. APPLICATION SUBMITTAL**. Broker shall submit each Application to Lender in a manner to be communicated to the Broker in writing by the Lender, as revised from time to time. Such methods of communication may include, but are not limited to, electronic, facsimile or written communication. Each Application submitted to Lender shall be subject to strict compliance with (i) the terms and conditions contained in this Agreement, (ii) the Broker Guide, and (iii) any other communications, announcements or guidelines provided by Lender to Broker from time to time. Each Application shall include all applicable fully-completed broker disclosure(s) which have been signed as of the date of application by the Applicant and Broker; the Uniform Residential Loan Application (Form 1003) signed by the Applicant; and such credit, financial and other information as set forth by the Lender from time to time. Broker shall assist Lender in obtaining any additional information needed by Lender or to otherwise facilitate the underwriting and closing of the loan transaction.

**2.3. PERFORMANCE OF BROKER SERVICES**. In addition to taking the information from Applicant, completing and compiling the Application, and providing and explaining the broker disclosure(s), Broker shall, for every loan, perform services, including but not limited to the following:

(a)  analyzing the Applicant's income and debt and pre-qualifying the prospective Applicant to determine the maximum loan amount that the prospective Applicant can afford;
(b)  educating the Applicant in the home buying and financing process, advising the Applicant about the different types of loan products available, and demonstrating how closing costs and monthly payments would vary under each product;
(c)  collecting financial information (e.g., tax returns, bank statements) and other related documents that are part of the application process;
(d)  initiating/ordering verifications of employment (VOEs) and verifications of deposits (VODs);
(e)  initiating/ordering requests for mortgage and other loan verifications;
(f)  initiating/ordering appraisals;
(g)  providing disclosures to prospective Applicants as required by applicable laws;
(h)  assisting Applicants in understanding and addressing credit problems;
(i)  maintaining regular contact with Applicants, real estate agents, and Lender between application and closing to apprise them of the status of the Application and to gather any additional information as needed;
(j)  initiating/ordering legal documents (e.g., title reports);

Rev 1/2/2018

(k)  analyzing the information provided by Applicant and confirming that the Applicant's Application complies with applicable laws; and

(l)  providing such other services as may be required by a particular loan transaction.

**2.4. BROKER COMPENSATION**. Any fee payable to Broker for its provision of goods, services or facilities for certain mortgage loans shall be paid in accordance with the terms of this Agreement and applicable law, and only in connection with a particular mortgage loan if each of the following conditions is met:

(a)  Broker has actually provided necessary goods, services and/or facilities in connection with the mortgage loan;

(b)  Broker is in compliance with all applicable federal, state and local laws and regulations and all of the terms of this Agreement and has submitted fully compliant and executed copies of all required disclosures with the Application;

(c)  Broker has submitted an executed mortgage loan origination agreement between Broker and Applicant that satisfies the requirements of applicable law;

(d)  Broker's compensation, any fees and charges paid to Broker, and/or fees and charges paid to third parties for services ordered by Broker, may not be greater than the amount set forth in the Loan Estimate ("Loan Estimate" shall be defined as outlined in the TILA-RESPA Rule).

(e)  Broker has performed, at a minimum, the services required under Section 2.3 of this Agreement; and

(f)  any lender-paid compensation is permitted under applicable law and does not violate any duty or obligation owed to the Applicant and shall not be greater than that allowed under applicable state, federal and local law (including, but not limited to, FHA guidelines, as applicable). Total compensation earned by Broker from all sources will constitute a reasonable payment for the goods, facilities and services actually provided by the Broker and Broker will not retain duplicative payments for any of those goods, fees or services.

**2.4.1 LOAN COMPENSATION.**

(a)  Lender shall pay to Broker, a fee, at the time of closing, for any mortgage loan Broker has submitted to Lender and for which Broker has provided actual services as a mortgage loan originator pursuant to Section 2.3 of this Agreement. Such fee shall be calculated pursuant to the Broker Guide, in the amount of ▮▮▮▮% of the initial principal balance advanced by Lender under each such mortgage loan plus a flat fee amount for each mortgage loan in the amount of $▮▮▮▮ (not to exceed $750). Such Loan compensation shall not be less than $▮▮▮▮ nor greater than $▮▮▮▮. Notwithstanding the foregoing, in no event shall the total Lender-paid compensation to Broker (percent plus flat fee) exceed the Lender's ▮▮▮▮ limitation on Broker compensation. The amounts specified in this subparagraph are subject to change. Any changes will be memorialized in an exhibit to this Agreement. Changes are not effective until agreed to by authorized representatives of Lender and Broker.

(b)  Broker acknowledges and agrees that any Loan compensation paid by Lender to Broker shall in no event be based on the Loan interest rate or other Loan terms.

Rev 1/2/2018

(c) Notwithstanding any of the foregoing, in no event shall Loan compensation be due and owing  Broker, or paid by Lender, if Broker is paid any Loan compensation directly from the borrower.

(d) Broker hereby agrees that it will not "steer" an Applicant to a loan product offering less favorable  terms in order to increase Broker's compensation and shall provide Applicant an Anti-Steering Loan  Option Disclosure in conformance with applicable law and the Broker Guide."

**2.5. COMMUNICATIONS WITH APPLICANT**. Broker shall be responsible for all communications with Applicants. Broker shall promptly deliver to such Applicants any documents prepared by Lender and  intended for delivery to Applicants regardless of the manner in which such documents are delivered to  the Broker.

**2.6 LOAN RESCISSION, REIMBURSEMENT OF FEES**. If Broker has collected any fees from an Applicant,  including any fees payable to a third party, in connection with a mortgage loan that is, (i) rescinded by  the Applicant pursuant to applicable state or federal law or regulation, or (ii) which does not fully  comply with applicable state or federal law or regulation, Broker shall promptly refund all such fees that  are required to be refunded to the Applicant.

**2.7. ASSIGNMENT**. Upon acceptance of the submitted Application by Lender, all of Broker's rights, title  and interest in the mortgage loan file and any and all of its contents shall be immediately assigned,  transferred and conveyed to Lender.

**2.7.1 BROKER CONSENT TO REISSUE CONSUMER CREDIT REPORTS.** Lender may request consumer  credit reports as a potential investor in connection with Broker's submitted Application(s) in the  evaluation or assessment of such Application(s) and subsequent approval(s) or denial(s) thereof. Broker  expressly consents to Lender's reissuance of consumer credit report(s) initially requested by Broker for  Applicant(s).

**2.8. NON-SOLICITATION/EARLY LOAN PAYOFF**. Neither Broker nor its officers, directors, agents,  employees or affiliated entities shall, for a period of 180 days from the date of funding of any mortgage  loan made by Lender, solicit an Applicant for the purpose of making a new loan or other credit  transaction which would be secured by the same property which secures such Applicant's mortgage loan  made by Lender. However, if an Applicant requests an additional loan or other credit transaction from  Broker without solicitation by or on behalf of Broker, which loan or other credit transaction would be  secured by the same property as the mortgage loan made by Lender, Lender shall be given a right of first  refusal with respect to such additional loan or other credit transaction. The term "solicit" as used herein  shall not include mass advertising via newspaper, radio, television and other similar forms of  communication not specifically directed to the Applicants. Notwithstanding anything to the contrary  contained herein, if any mortgage loan submitted by Broker to Lender pursuant to this Agreement is  paid in full within 180 days from the date of funding, Broker shall pay to Lender all compensation paid to  Broker in connection with such mortgage loan. Lender reserves the right to offset any amounts due  hereunder, at any time and without prior notice, against any amounts due to Broker under this  Agreement.

**2.9. APPRAISALS/OTHER LOAN RELATED FEES.** Except to the extent otherwise provided in the Broker Guide, Broker shall obtain real estate appraisals only from those appraisers which are

Rev 1/2/2018

authorized by Lender and available through appraisal management companies engaged by Lender ("Authorized Appraisers"). Lender agrees to furnish Broker with a list of its approved appraisal management companies from time to time. In connection with submitting an Application, Broker is responsible for initiating and ordering all real estate appraisals through the Lender's portal solely through an appraisal management company approved by Lender and appraisal management company shall directly engage an Authorized Appraiser from time to time. Broker must indicate the billing method in which the appraisal will be paid for at the time the appraisal order is submitted in the Lender portal. Broker is responsible for payment of any and all fees associated with the appraisal order including, but not limited to, all appraisal related fees, trip fees and cancellation fees, irrespective if fees are collected from the Applicant, if Applicant's method of payment is declined or disputed, or if the loan does not close. Broker may elect to have the Applicant pay for the appraisal fee at closing, and Lender will charge it on the Closing Disclosure. At the time the appraisal order is submitted, Broker will have the option to request reimbursement of appraisal fees collected from the borrower at closing.

Broker may collect or charge the appraisal fees to the Applicant prior to closing provided that Broker has obtained written authorization from the Applicant to do so and Broker's practices comply with all laws and regulations regarding the collection of fees in advance of closing, specifically including Applicant's right to a refund upon rescission.

Broker acknowledges that during the processing of the loan application, it may be necessary for Lender to incur other loan related costs, including by way of example but not limited to, costs for additional documentation regarding the appraisal or appraised value and land surveys. Prior to incurring these additional costs, Lender will contact Broker for approval. Broker further acknowledges that Lender may need to attain condominium association documents, including but not limited to condo questionnaires, condo budgets, master deeds, bylaws, and articles of incorporation. For these condo related items, Broker grants Lender the right to incur such costs on Broker and Applicants behalf without prior approval. Should the loan transaction not close, Broker shall assume responsibility for payment of these additional costs.

Broker will be invoiced these costs monthly and payment is due to Lender within 15 days of receipt of the invoice. In the event of non-payment, Lender reserves the right to offset the amounts due by Broker to Lender from any amounts to be paid to Broker for mortgage loans submitted by Broker under this Agreement.

**2.10 REAL ESTATE SETTLEMENT PROCEDURES ACT.** In connection with this Agreement, Broker understands and acknowledges the following with respect to the lender-broker relationship and certain requirements covered by the Integrated Mortgage Disclosures Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth In Lending Act (Regulation Z) (78 FR 7973, December 31, 2013) (the "TILA-RESPA Rule"):

(a) Broker acknowledges:

  i.  An application under the TILA-RESPA Rule is obtained when the Broker has collected the following pieces of information: (1) consumer's name; (2)

Rev 1/2/2018

consumer's income; (3) consumer's social security number to obtain a credit report; (4) property address; (5) an estimate of the value of the property; (6) and the mortgage loan amount sought.

ii.     Broker is required to submit/register the loan with Lender within 2 business days (business day shall be as defined under the TILA-RESPA Rule) from obtaining an application.

iii.    Lender will deliver the Loan Estimate.

(b)  Lender shall accept only those loan application packages that were submitted within two business days of receiving an application as defined within this Section 2.10(a).  Broker shall be solely responsible for failure to comply with this provision.

(c)  Broker acknowledges that if the actual settlement costs and fees associated with the closing of a mortgage loan are out of tolerance at closing, according to the applicable tolerance limitations in place at the time of closing and according to applicable rules and regulations promulgated under the  Real Estate Settlement Procedures Act, then Lender is responsible under such regulations to correct  and cure any such tolerance violations to the borrower within thirty (30) days of the closing date;

(d)  Unless prohibited by applicable law, Broker further acknowledges that, in consideration of Lender's  responsibility to correct and cure tolerance violations associated with quoted fees on the Loan  Estimate, for those fees, charges or other quotes that were attributed in any way to or by Broker and relied upon by Lender, Broker shall, at Lender's election, either (i) make such tolerance  corrections out of proceeds to be received by Broker in connection with the applicable loan, or (ii)  Broker shall reimburse Lender for any such tolerance violations at  the closing of each such loan  requiring such tolerance cure or upon Lender's later demand.


3.     **DUTIES OF LENDER**

**3.1. UNDERWRITING OF MORTGAGE LOANS**. Lender or its agent shall underwrite every Application in  accordance with the terms of this Agreement. Lender shall have no obligation to approve or close a  mortgage loan which in its sole discretion does not meet Lender's underwriting requirements. In making  its determination, Lender expressly disclaims any conclusions Broker may draw as to the general quality  or acceptability of the Application. Lender retains sole and absolute discretion to reject any Application  which does not comply with the terms and conditions of this Agreement, or for any reason whatsoever  (except any reason prohibited by Law), and to set the terms and conditions of any approval of an  Application. Lender shall notify Broker of the disposition of an Application. Broker may not represent that Lender has approved or will approve any Application until Lender informs Broker in writing that it  has done so. If Lender declines any Application, Lender shall notify the Applicant promptly and deliver  the required adverse action notice to the Applicant in accordance with applicable state, federal and local  laws. Lender will have

Rev 1/2/2018

no obligation or liability to Broker for any mortgage loan which is not closed by Lender or for any delays in the processing or closing of any Applications.

**3.2. CLOSING OF MORTGAGE LOANS**. Lender shall proceed to the closing of the mortgage loan under the terms and conditions of its approval. Lender shall prepare the closing package and close the mortgage loan in its name and with its own funds.

**4.        REPRESENTATIONS, WARRANTIES AND COVENANTS OF BROKER**

As an inducement to enter into this Agreement and to consummate the transactions contemplated hereunder, the parties set forth below make the following representations, warranties and covenants to the other and any successor in interest to such other party under this Agreement as of the date hereof, as of each and every date Broker submits an Application to Lender, and as of the date any related mortgage loan is closed and funded by Lender. Each party shall be deemed to have relied on such representations, warranties and covenants, regardless of any independent investigation it may have made or may hereafter make.

**4.1. DUE ORGANIZATION; GOOD STANDING**. Broker and Lender each covenant, represent and warrant that it is duly organized, validly existing and in good standing (in the case of a corporation or limited liability company) under the laws of the state governing its creation and existence during the time of its activities with respect to the origination and closing of the mortgage loans subject to this Agreement.

**4.2. AUTHORITY AND CAPACITY**. Broker and Lender each covenant, represent and warrant that it has all power, authority and capacity legally required to enter into this Agreement and to perform the obligations required of it hereunder. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate officers, board members, or other governing body or persons of each party to this Agreement. This Agreement constitutes a valid and legally binding Agreement between the parties, enforceable in accordance with its terms.

**4.3. EFFECTIVE AGREEMENT; NO CONFLICTS**. The execution, delivery and performance of this Agreement by each party, its compliance with the terms hereof and consummation of the transactions contemplated hereby will not violate, conflict with, result in a breach of, give rise to any right of termination, cancellation or acceleration under, constitute a default under, be prohibited by or require any additional approval under its articles of incorporation (in the case of a corporation), bylaws, partnership agreement or other applicable organizational documents or any instrument or agreement to which it is a party or by which it is bound, or any Law, or any judicial or administrative decree, order, ruling or regulation, applicable to it.

**4.4. COMPLIANCE WITH ALL APPLICABLE LAWS**. Broker has complied, and shall comply, both in the conduct of business generally, and in its origination of each mortgage loan, with all applicable laws ("Laws"), including, without limitation upon the generality of the foregoing, the Equal Credit Opportunity Act ("ECOA") and Regulation B, including without limitation its requirements relating to nondiscrimination; the Truth-in-Lending Act, and Regulation Z; RESPA and Regulation X; the Bank Secrecy Act and 31 CFR Chapter X; the Fair Housing Act; the Gramm-Leach-Bliley Act; the S.A.F.E. Mortgage Licensing Act and Regulations G and H; the Mortgage
Rev 1/2/2018

Acts and Practices-Advertising and Regulation N; the Fair Credit Reporting Act; and all applicable state and local laws and regulations governing mortgage lending and mortgage brokerage (including New York Executive Law Section 296-a if applicable). Broker represents and warrants that no mortgage loan is, (i) a High Cost Loan as that term is defined by the Home Ownership and Equity Protection Act ("HOEPA"), (ii) a Higher-Priced Mortgage Loan, as that term is defined under Regulation Z, (iii) a high-cost loan under any similar federal, state or local law, or (iv) the mortgage loan does not fall into any other classification under state law which is not eligible for purchase. Broker represents and warrants that it, and its mortgage loan originators, are properly licensed or registered in all jurisdictions where required for the origination of mortgage loans as provided for in this Agreement and agrees to maintain all applicable licenses, registrations and approvals in good standing during the term of this Agreement. Broker further represents and warrants that it shall not engage in any unfair, deceptive, or abusive acts or practices. Broker has not used and shall not use any affiliated vendors without disclosure of such relationship and the express written authorization by Lender.

Broker represents and warrants that it not only complies with all applicable state and federal laws, but that it has implemented and effectively maintains appropriate policies, procedures, internal controls, and training materials ("Compliance Program") covering such laws. Failure by Broker to maintain a satisfactory Compliance Program will result in the termination of this Agreement. Failure by Broker to maintain satisfactory compliance with all Laws will result in termination of this Agreement. Broker regularly conducts appropriate training of its employees concerning such state and federal laws. Broker agrees to provide, upon Lender request, any policies, procedures, internal controls, training materials, and audit results related to Broker's Compliance Program and the training of its employees.

Broker represents and warrants it has implemented and will continue to maintain a satisfactory Anti- Money Laundering ("AML") Program (for as long as this Agreement is in effect) as required by 31 CFR Parts 1010 and 1029, including without limitation to the following: (a) the development of effective internal policies, procedures, and controls; (b) the designation of a qualified compliance officer; (c) an ongoing and compliant AML employee training program; and (d) an independent audit function to test the AML Program. Broker will perform all applicable obligations under AML laws and regulations, and any amendment thereto, as to verifying the identity of each applicant or client of the Broker and the monitoring, recordkeeping, reporting and other applicable obligations regarding transactions and other activity with each applicant. Broker shall ensure that it obtains an independent audit for compliance with AML laws and regulations, including independent testing, by a duly qualified and unrelated party or duly qualified and independent employee of Broker. But for such information/records that it is legally unable to disclose, Broker shall make any and all information and records (including but not limited to policies, procedures, and audit reports) available to Lender upon request regarding Broker's compliance with its AML Program.

**4.5. NOTICE OF THREATENED ACTIONS**. Except as previously disclosed in writing to and acknowledged in writing by Lender, neither Broker, or any its principals, officers, directors, managers, mortgage loan originators or underwriters, has been suspended, terminated, sanctioned or issued any administrative order, Cease and Desist decree or been the subject of regulatory action by FHA, VA, FNMA, FHLMC, GNMA, any mortgage insurance company, or any federal, state or local regulatory authority. Broker shall immediately advise Lender in writing of any inquiry, material complaint or pending or threatened action against it or any of its principals,

Rev 1/2/2018

officers, directors, managers, mortgage loan originators or underwriters, by way of a proceeding or otherwise, to revoke or limit any license, registration, permit, authorization or approval issued or granted by any federal, state or local government or quasi- governmental body, or any agency or instrumentality thereof, necessary for Broker, or any of such related parties, to conduct its business or perform his/her functions, or to impose any penalty or other disciplinary sanction in connection therewith, or any other sanction that would materially affect Broker's business. In addition, in the event Broker receives any letter, notice, or other writing ("Notice") from any regulatory agency with respect to any Application submitted to Lender, Broker shall advise Lender immediately of such Notice and deliver a copy of the Notice to Lender. Broker further warrants that no material complaints have been filed against Broker, or any of its principals, officers, directors, managers, mortgage loan originators or underwriters, alleging unfair and deceptive practices and/or violations of Consumer Protection Laws and will notify Lender immediately in the event of any such occurrence.

**4.6. LITIGATION**. Except as previously disclosed in writing to and acknowledged in writing by Lender, Broker is not party to (a) any pending, or, to Broker's knowledge, threatened litigation as a defendant involving fraud, misrepresentation, violation of any state or federal lending laws or regulatory compliance, (b) any claims by Applicants, or (c) any negative investor or regulatory finding through audits or examinations.

**4.7 FRAUD.** Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the Applicant, or any other third party retained by or controlled by Broker or Applicant (other than affiliates of Lender) involved in the origination of the mortgage loan. Broker understands and agrees that in the event Lender reasonably believes misrepresentations or fraud generated either through the Broker (by any Applicant or third party), by the Broker, or with the Broker's knowledge exist in an Application or any related documents, Lender may report such misrepresentation or fraud to the appropriate state and federal regulatory authorities, law enforcement agencies, and fraud databases. Broker acknowledges the importance of Lender's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in connection with Lender's disclosure of such information.

**4.8. NO UNTRUE OR MISLEADING STATEMENTS**. No representation, warranty or written statement made by Broker to Lender in this Agreement or in any schedule, written statement or document furnished to Lender in connection with the transactions contemplated hereby contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading.

**4.9. INSURANCE**. Unless otherwise agreed to in writing, Broker possesses and shall maintain, at no expense to Lender, during the term of this Agreement, fidelity bond coverage and errors and omissions insurance, and shall furnish evidence of such coverage upon request of Lender. Such policies shall be in reasonable amounts, with acceptable standard coverages, satisfactory to Lender and compliant with applicable law and investor and agency guidelines. Broker shall notify Lender of changes thereto or cancellations thereof.

Rev 1/2/2018

**4.10. BUSINESS INFORMATION**. Broker shall furnish to Lender and its representatives any necessary information and data concerning the affairs of Broker, as Lender may reasonably request, including without limitation information regarding the status of its licenses, permits, authorizations and approvals necessary for the conduct of its business as well as copies of such documents. Broker shall furnish, annually as requested by Lender, copies of financial statements, the type and sufficiency of which shall be determined by Lender in its sole discretion, together with such other information bearing upon Broker's financial condition as Lender may reasonably request.

**4.11. ABILITY TO PERFORM**. Broker represents that it employs or will employ a sufficient number of knowledgeable and capable individuals to perform the services required by this Agreement.

**5.        REPRESENTATIONS, WARRANTIES AND COVENANTS AS TO EACH MORTGAGE LOAN**

As further inducement to Lender to enter into this Agreement and to consummate the closing and funding of mortgage loans hereunder, Broker makes the below referenced representations, warranties and covenants. Each of the following representations and warranties (a) applies to any and all Applications submitted by Broker to Lender, (b) is for the benefit of Lender and its successors and assigns, (c) continues in full force and effect for so long as Lender is subject to any risk of loss or liability as to any Application submitted by Broker, (d) is deemed to have been relied on by Lender, regardless of any independent investigation it may have made or may hereafter make, and (e) is in addition to any other specific representations or warranties contained elsewhere herein.

**5.1. COMPLIANCE WITH ALL APPLICABLE LAWS**. Broker has complied with and all Applications have complied with all applicable federal, state and local laws, rules, and regulations, including without limitation, the Truth-In-Lending Act and Regulation Z; the Fair Credit Reporting Act; the Equal Credit Opportunity Act and Regulation B; the Real Estate Settlement Procedures Act and Regulation X; the Bank Secrecy Act and 31 CFR Chapter X; the Fair Housing Act and all applicable state and federal fair lending and fair housing regulations (including New York Executive Law Section 296-a if applicable); the Gramm- Leach-Bliley Act; the S.A.F.E. Mortgage Licensing Act and Regulations G and H; the Mortgage Acts and Practices-Advertising and Regulation N; and all applicable predatory and abusive lending laws. No Application submitted by Broker shall constitute a transaction which would be subject to coverage under the Home Ownership and Equity Protection Act ("HOEPA") or Section 32 of Regulation Z of the Truth-in-Lending Act, or constitute a Higher-Priced Mortgage Loan as that term is defined under Regulation Z, or which would otherwise be considered a "high rate" or "high cost" loan under applicable state law.

**5.2. COMPLIANCE WITH LENDER POLICIES AND PROCEDURES**. The origination of each mortgage loan complies in all respects with the terms of this Agreement. Each Application submitted was originated by Broker and not by a third party. All Applications, including all mortgage loan documents and information and documentation submitted in connection with such Applications, have been prepared and/or completed in accordance with applicable law and all information provided by each of Applicant and Broker in such Applications are true and correct in all respects

Rev 1/2/2018

and do not fail to disclose any facts which could be material or which would make such information misleading. All broker compensation has been fully disclosed to Applicant in compliance with applicable laws. The Applicant has executed and received a copy of all broker disclosure(s) as required by applicable law and there are no disputes with respect to Broker's compensation in connection with the origination or closing of each mortgage loan.

**5.3  FRAUD.** Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the Applicant, or any other third party retained by or controlled by Broker or Applicant (other than affiliates of Lender )involved in the origination of the mortgage loan. Broker understands and agrees that in the event Lender reasonably believes misrepresentations or fraud generated either through the Broker (by any Applicant or third party), by the Broker, or with the Broker's knowledge exist in an Application or any related documents, Lender may report such misrepresentation or fraud to the appropriate state and federal regulatory authorities, law enforcement agencies, and fraud databases. Broker acknowledges the importance of Lender's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in connection with Lender's disclosure of such information.

**5.4.  FACTUAL DISCLOSURE**. All facts relating to any Application and/or related mortgage loan transaction which are known or should be known to Broker which may adversely affect the value of the mortgaged property, the credit, character or capacity of the Applicant, the validity of the mortgage, or any other aspect of the transaction have been disclosed in writing to Lender.

**5.5. NO ADVERSE CIRCUMSTANCES**. Broker has no knowledge of any circumstances or conditions with respect to any Application, mortgaged property, Applicant or Applicant's credit standing that reasonably could be expected to cause third party investors to regard the related mortgage loan as an unacceptable investment, cause the mortgage loan to become delinquent or adversely affect the value or marketability of the mortgage loan.

**5.6. FHA LOANS**. If the Application is delivered to Lender for a loan intended to be insured by the Federal Housing Administration ("FHA"), it has been originated in conformance with all applicable FHA requirements and Broker is authorized under applicable FHA regulations to originate an FHA loan. Broker has taken no action or failed to take any action, the effect of which would prevent Lender from obtaining FHA insurance or which would at any time invalidate, in whole or in part, the FHA insurance on any submitted Application which is subsequently approved, closed and funded by Lender.

**5.7. APPRAISALS**. The real estate appraisal submitted with each Application has been ordered through Lender's designated appraisal management company in accordance with the Broker Guide.

**5.8. COMPLIANCE WITH LENDER REQUIREMENTS, FNMA, FHLMC OR INVESTOR GUIDELINES**. All Applications submitted to Lender shall be in full conformance with this Agreement, the Broker Guide and all applicable Lender requirements. If the Application is submitted to the Lender for a loan intended to be a conventional conforming loan, it has been originated in conformance with all applicable requirements of Fannie Mae or Freddie Mac for sale to Fannie Mae or Freddie Mac

Rev 1/2/2018

and inclusion in a  Fannie Mae or Freddie Mac mortgage backed securities pool, as applicable, and is otherwise originated  as an investment quality loan suitable for sale on the secondary market to a secondary market investor.

**5.9. NO OTHER AGREEMENTS**. Except as otherwise permitted by Lender, Broker has not made, directly  or indirectly, any payment on the mortgage loan, the Application, or any fee paid for goods and services  rendered in connection with the origination and closing of the mortgage loan, or on any other loan of  Applicant from any other person or entity. Broker has also not made any agreement with any Applicant  providing for any variation of the Note rate, schedule of payment or other terms and conditions of the  mortgage loan; and Broker has not received a request for approval of or notice of any proposed  assumption, loss draft or payoff of the mortgage loan.

**6.      REMEDIES FOR BREACH OF AGREEMENT**

In addition to any other rights and remedies that Lender may have, upon discovery by either Broker or  Lender of any breach of any representation, warranty or covenant of this Agreement, the party  discovering the breach shall promptly notify the other. Within thirty (30) days after discovery by or  notice to Broker of any breach, Broker shall promptly cure such breach to the reasonable satisfaction of  Lender. Notwithstanding the cure period set forth above, in the event of a breach of representation, or   warranty, or covenant of this Agreement which in the sole judgment of Lender cannot be cured within  such thirty (30) day time period, Lender may demand and Broker shall be required to repurchase in all  material respects said loan from Lender or the investor to whom Lender sold the loan for the  "Repurchase Price." The Repurchase Price shall be an amount equal to the sum of (i) the current unpaid  principal balance of the loan at the time of repurchase (or at the time of the foreclosure sale date if the  related loan has been foreclosed), (ii) accrued but unpaid interest on such principal balance at the Note  rate from the paid-to date of the loan through and including the last day of the month in which the Repurchase Price is paid, (iii) all costs and expenses, including without limitation, reasonable attorneys'  fees and expenses, incurred by Lender as a result of Broker's breach of this Agreement or enforcing the  terms of this Agreement or Broker's obligation to repurchase the loan, (iv) any premium paid by Lender  in excess of the principal balance of the loan at the time of purchase if Lender has not sold the loan at  the time of Broker's repurchase or if Lender has sold the loan and it is required to reimburse the  purchaser, the premium that the purchaser paid to Lender, (v) any unreimbursed advances made by  Lender, including without limitation taxes or insurance or payments authorized by the Note or the  mortgage or applicable law to protect Lender's interest in the loan or related property and (vi) any other  fees, costs or amounts relating thereto. The Repurchase Price shall be reduced by (i) any proceeds of  mortgage insurance collected by Lender with respect to the loan that have not been applied to the  unpaid principal balance; and (ii) if the loan has been foreclosed and the property has been sold to a  third party, the proceeds of the sale price received by Lender net of all advances, costs and expenses,  including but not limited to reasonable attorneys' fees and expenses, incurred by Lender in connection  with such sale.

It is agreed by the parties that Broker's repurchase obligation shall not be obviated by the fact that the  property securing the loan has been foreclosed upon and said property has been acquired by Lender or  a third party. The repurchase obligation encompasses the repurchase of the property from Lender if  Lender has acquired the property, or, if a third party has acquired the property, reimbursing Lender as  set forth herein. Notwithstanding anything to the contrary, in no event shall a full credit bid made by  Lender, its successors or assigns, or any related party, at a

Rev 1/2/2018

foreclosure sale of any loan affect in any way  the rights and remedies of Lender or the obligations of Broker under this Agreement, including without  limitation the obligations of Broker to repurchase and indemnify Lender as provided herein.

## 7.     RESPONSIBILITY FOR FRAUD

Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the  Applicant, or any other third party involved in the origination of the mortgage loan. Broker understands  and  agrees  that  in  the  event  Lender  reasonably  believes misrepresentations or fraud generated either  through the Broker (by any Applicant or third party), by the Broker, or with the Broker's knowledge exist  in an Application or any related documents, Lender may report such misrepresentation or fraud to the  appropriate state and federal regulatory authorities, law enforcement agencies, and fraud databases.  Broker acknowledges the importance of Lender's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in  connection with Lender's disclosure of such information.

## 8.     INDEMNIFICATION

In addition to the remedies set forth in Section 6 above, Broker shall indemnify, defend and hold Lender  harmless against and in respect of, and shall reimburse Lender for any and all losses, liabilities, claims,  damages, costs including without limitation attorneys' fees and costs (including allocated costs of in-  house counsel), and actions suffered or incurred by Lender which arise out of, result from or relate to:
(a) the breach by Broker  of any covenant, condition, term, obligation, representation  or  warranty contained  (i)  in  this  Agreement,  or  (ii)  in  any  written  statement  or  certificate  furnished  by Broker  pursuant to this Agreement, including without limitation those arising from any improper origination or  processing of mortgage loans; or (b) any material act or omission of Broker or any employee or agent of  Broker which adversely affects any mortgage loan submitted to and funded by Lender hereunder.

Without limiting the foregoing, Broker's obligations under this Section 8 shall include costs and expenses  associated with Lender's efforts to enforce this Agreement. In all actions with third parties in which  Lender has the right to be indemnified hereunder, Lender shall have the complete and  exclusive  right  to  determine  the  conduct  and  defense  of  such  legal  proceeding  or investigation  with  such  third  party  including without limitation the right to compromise, settle, defend or continue any such action.

## 9.     TERM; TERMINATION

**9.1. TERM**. The term of this Agreement shall commence as of the date hereof and shall extend until the  termination of this Agreement pursuant to this Article.

**9.2. TERMINATION**. Broker acknowledges that Lender may with or without cause terminate this Agreement at any time, immediately upon providing written notice to Broker at Lender's sole discretion.  Such termination shall not in any respect change or modify the obligations of the parties
Rev 1/2/2018

with respect to
(a) Applications which have been submitted to Lender pursuant to the terms of this Agreement prior to  the date of termination (except in the case of fraud) or (b) Broker's obligations under this Agreement  accruing prior to the date of termination.

**9.3.  SURVIVAL**. All of the representations, warranties and covenants made by Broker herein and Broker's obligations of repurchase in Section 6, indemnification in Section 8, and non-solicitation  in  Section 2.8, shall survive any termination of this Agreement, and shall be fully applicable whether or not  Lender relies thereon or has knowledge of any facts at variance therewith.

**10.  MISCELLANEOUS**

**10.1.  ASSIGNMENT**. Lender shall have the right to assign or transfer this Agreement and its duties,  obligations or rights hereunder, as well as any authorization and/or information provided by Broker to  Lender in connection with Lender's approval or recertification of Broker. Broker may not assign, transfer  or subcontract any of its duties, obligations or rights under this Agreement without Lender's prior  written consent. A change in the ownership of, or merger or consolidation of Broker, or sale by Broker of  substantially all of its assets, shall be considered an assignment for purposes of this Agreement. In the event Lender assigns any of its rights in the mortgage loans closed hereunder, such assignee shall have  the same rights as Lender with respect to this Agreement.

**10.2. NOTICES**. All notices or other information transmitted in connection with this Agreement shall be  in writing and sent by (a) personal delivery, (b) prepaid overnight courier, (c) certified mail, return  receipt requested, postage prepaid or (d) telefacsimile transmission with confirmation sheet attached,  and addressed as follows:

If to Broker:

625 The City Dr S Ste 400    Orange        CA        92868

Attn: Laurence Huttunen

Fax: 714-418-4205

With a copy to:

If to Lender:
Quicken Loans Mortgage Services
6135 Park South Drive
Suite 200

Rev 1/2/2018

Charlotte, NC  28210
Attention: Joanna
McGinn Fax: (877) 497-
2689

With a copy to:
Quicken Loans Inc.
1050 Woodward Avenue
Detroit, MI  48226
Attention:  Legal
Team Fax: (877) 380-
4962

Either party may change its address for notice purposes by giving written notice of the change to the  other party. A notice or other communication sent in compliance with the provisions of this section  shall be  deemed good and sufficient service regardless of whether the parties actually received such  notice.

**10.3. BOOKS AND RECORDS**. Broker shall prepare and maintain files of mortgage loans in accordance with applicable guidelines established in the industry and applicable law. Broker will cooperate with  Lender in  the  investigation  of any  claim  and  assist  in the  defense  of any lawsuit  arising  out  of  the  obligations  of  the  parties  under  this  Agreement.  Each  party  will reasonably cooperate with the other, its  auditors and/or regulatory examiners in any audit or regulatory examination of the other party.

**10.4. RELATIONSHIP OF PARTIES**. Neither party is the partner, agent, employee or representative of the  other and  nothing in this Agreement shall  be construed  or  deemed  to create a partnership, joint  venture,  agency  or  employment  relationship  between  Lender  and  Broker.  Broker  shall conduct business  in its own name and not in Lender's name. Broker shall not represent that its office is an office, branch  or agent of Lender or in any other way connected with Lender. Broker shall have no authority to sign any  documents on behalf of Lender. Broker shall be responsible for  its  overhead  and  operations  costs,   payroll  costs  and  all  other  costs.  Broker  shall  not  hold itself out to prospective Borrowers as having the  authority to approve loan requests or to issue loan commitments on behalf of Lender. Broker shall not  represent that Lender has approved or will approve any loan request until Broker is so informed by  Lender in writing.

**10.5. BROKERS**. Each party represents and warrants that there are no claims for brokerage commissions  or finders' fees or other claims for money from any agent or similar intermediary in connection with  Broker's entering into this Agreement with Lender, and each party agrees to indemnify and hold  harmless the other party with respect to any and all liability for any such fee or commission which is  required to be paid to any such agent or broker.

**10.6. CONFIDENTIALITY**. Each party agrees that information concerning the other's business (including  that of all corporate affiliates) is "Confidential Information" and proprietary and shall be maintained in  confidence and not disclosed, used, duplicated, published, disseminated or otherwise made available  except as described in this section. Confidential Information may include, without

Rev 1/2/2018

limitation, pricing sheets, lists of, or other information relating to and identified with customers, trade secrets, confidential and proprietary methods, techniques, processes, applications approaches, and other information of each party in various forms, which information is used or is useful in the conduct of that party's business including the origination, purchase, and sale of mortgage products and the subject matter of this Agreement. Each party may use Confidential Information of the other party only in connection with its performance under this Agreement. Except as described in this Agreement, the parties shall not copy Confidential Information or disclose Confidential Information to persons who do not need Confidential Information in order to perform under this Agreement.

Broker and Lender each agree to comply with all applicable federal, state and local statutes and regulations respecting the privacy of consumer information including the privacy provisions of the Gramm-Leach-Bliley Act (15 U.S.C. Section 6801, et seq.) and any similar state laws. Each party acknowledges and agrees that it is required to comply with the information security standards required by the Gramm-Leach-Bliley Act (15 U.S.C. 6801, 6805(b)(1)) and the regulations issued thereunder (12

C.F.R. Part 40) and with other statutory, legal and regulatory requirements as well as its internal information security program for information protection. Before Broker provides Lender with non-public personal information concerning Broker's consumers and customers, Broker shall obtain authorization from such consumers and customers to forward such information and further permit Lender to share such information with unspecified third parties solely in furtherance of the request by such consumers and customers for financial services. Broker acknowledges that pursuant to this Agreement, it may receive non-public personal information concerning Lender's consumers and customers. With respect to such information, Broker agrees that it shall not: (a) use the non-public personal information provided by Broker for any purpose other than in connection with the enforcement of its rights or the performance of its duties under this Agreement; and (b) share any non- public personal information provided by Lender other than in connection with (i) the enforcement of its rights or the performance of its duties under this Agreement (ii) pursuant to the exceptions set forth in 15 U.S.C. Section 6802(e) and accompanying regulations, (iii) as required by law, or (iv) in connection with requests or demands by bank examiners.

Confidential Information of the other party shall be returned to such party or destroyed in accordance with such party's commercially reasonable records retention program upon termination of this Agreement. Confidential Information does not include information that is generally known or available to the public or that is not treated as confidential by the party claiming such information to be confidential, provided, however, that this exception shall not apply to any publicly available information to the extent that the disclosure or sharing of the information by one or both parties is subject to any limitation, restriction, consent, or notification requirement under any applicable federal or state information privacy law or regulation then in effect. In the event it is necessary for Broker or Lender to disclose Confidential Information of the other party to a third party in order to perform its duties hereunder and the other party has provided it with written authorization to do so, such party shall disclose only such Confidential Information as is necessary for such third party

Rev 1/2/2018

to perform its obligations. A breach of each party's confidentiality obligations may cause the other party to suffer irreparable harm in an amount not easily ascertained. The parties agree that such breach, whether threatened or actual, will give the other party the right to obtain equitable relief (i.e., obtain an injunction to restrain such disclosure or use without the requirement of posting a bond), and pursue all other remedies it may have at law or in equity.

**10.7. ADVERTISING AND TRADEMARK**. Broker shall not engage in any form of advertising whatsoever utilizing either the name of Lender or any subsidiary or affiliate of Lender or any of the product names, trade names, symbols or trademarks of any of Lender's loan products, unless specifically licensed in writing to do so.

**10.8. ENTIRE AGREEMENT**. This Agreement contains the entire Agreement between the parties and supersedes all prior agreements and understandings with respect to the subject matter hereof.

**10.9. MODIFICATION AND WAIVER**. No termination, cancellation, modification, amendment, deletion, addition or other change in this Agreement, or any provision hereof, or waiver of any right or remedy herein provided, shall be effective for any purpose unless specifically set forth in writing signed by an authorized officer of the party or parties to be bound thereby. The waiver of any right or remedy in respect of any one occasion shall not be deemed a waiver of such right or remedy in respect of such occurrence or event on any other occasion. Nothing in this paragraph shall be interpreted to restrict Lender's right to modify the Agreement as provided for elsewhere in this Agreement or to publish such modifications in writing or by electronic means including, but not limited to, posting to the Lender website.

**10.10. MODIFICATION OF OBLIGATIONS**. Lender may, without any notice to Broker, extend, compromise, renew, release, modify, adjust or alter, by operation of law or otherwise, any of the obligations of an Applicant or other persons obligated under a mortgage loan without releasing or otherwise affecting the obligations of Broker with respect to such mortgage loan or otherwise under this Agreement.

**10.11. SURVIVAL OF PROVISIONS**. If any of the terms or provisions of this Agreement are for any reason whatsoever held invalid, then such terms or provisions will be deemed severable and shall in no way affect the validity or enforceability of such remaining provisions and terms, all of which shall remain in full force and effect. All of the covenants, agreements, representations and warranties made herein by the parties hereto shall survive and continue in effect after the termination of the Agreement or the consummation of the transactions contemplated hereby.

**10.12. GOVERNING LAW; JURISDICTION**. This Agreement shall be governed by, and construed and enforced in accordance with, applicable federal law and the laws of the State of Michigan. Any action arising out of this Agreement or the transactions contemplated hereby may be instituted in any state or federal court located in the State of Michigan. Further, each party expressly waives any objection which such party may have to the laying of venue of any such action, and irrevocably submits to the jurisdiction of any such court and agrees to be fully bound by any final unappealed decision of those courts.

**10.13. AGREEMENT FAIRLY CONSTRUED**. This Agreement shall be construed fairly as to both parties and not in favor of or against either party, regardless of which party prepared this Agreement.

Rev 1/2/2018

**10.14.  HEADINGS**. The headings of the various sections of this Agreement have been inserted for  convenience of reference only and shall not be deemed to be a part of this Agreement.

**10.15. GOOD FAITH DEALING**. The parties hereto agree to deal in good faith with each other at all times.

**10.16. EXPENSES**. Each party shall pay its own expenses incident to this Agreement and the transactions  contemplated hereby, including, but not limited to, all fees of its counsel and accountants, whether or  not any of the transactions contemplated shall be consummated.

**10.17.  COUNTERPARTS**. This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be  deemed to constitute one and the same instrument.

**10.18. BROKER CONSENT**. Approval of a broker application by Lender and execution of this Agreement  by both parties are required prior to participation in Lender's Loan Programs. Broker and its owners,  officers and employees are subject to a background check as part of Lender's application review process and on-going monitoring of brokers participating in Lender's program. These checks may be performed  by Lender, its subsidiaries and affiliates, or in whole or in part by a third party service provider ("Service   Provider") on Lender's behalf. Broker acknowledges that, as part of Lender's application review process,  Lender will receive for its review and verification a broker application provided by Broker to Lender or  Service Provider, and that either or both of Lender and Service Provider may perform due diligence  reviews of the broker application. Broker hereby consents to this review process and to Lender's use of  the Broker application and related materials (the "Broker Package") as described herein and authorizes  Lender, its subsidiaries and affiliates, or Service Provider to verify any information contained in the  Broker Package with the sources referenced therein. Broker further authorizes Lender to consult such  other sources, and perform such additional due diligence as Lender deems necessary, in its sole  discretion, to evaluate Broker's application and continuing qualification for participation in Lender's  Loan Programs. Broker hereby gives its express consent to receive facsimile transmissions (hereafter referred to as "faxes") from Lender and its employees, parents, subsidiaries, affiliates, agents and/or  assigns, including but not limited to those faxes that may constitute advertisements of the various Loan Programs, products and/or services offered from time to time by Lender. This consent to receive faxes shall apply to the telephone facsimile numbers listed on the Broker Application. This consent shall  remain in effect until it is revoked in a writing delivered to Lender at the address contained in this  Agreement. Broker also agrees that should it access any of Lender's Loan Programs electronically that it  will be subject to any separate Terms and Conditions contained on Lender's internet site.

**10.19. RIGHT OF OFFSET.**  Lender shall have the right to, at any time and without prior notice, deduct  any penalties, fees, expenses, or other charges or obligations of any kind owed by Broker to Lender from  any amounts to be paid to Broker for mortgage loans submitted by Broker under this Agreement.

**10.20. RELEASE OF LIABILITY**. Broker hereby discharges and releases Lender, its parent companies,  subsidiaries and affiliates, and their present and future directors, officers,

Rev 1/2/2018

employees, attorneys, and agents, and the successors and assigns of any of the foregoing, of and from any and all claims, demands, actions, causes of action, suits, damages, attorneys' fees, costs and expenses of suit, liabilities and judgments of whatsoever kind (a "Claim"), by reason of any act or omission relating to Lender's or Service Provider's use of the Broker Package or verification of any information contained therein. Broker further indemnifies and agrees to defend and hold Lender harmless with respect to any Claim made by any past, present or future owner, officer, or employee of Broker with respect to such use or verification.

       IN WITNESS HEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**NAME OF BROKER COMPANY:** Sterling Homex Inc. _____

       **QUICKEN LOANS INC.**

By: _____

       By: _____

     Signature

          Signature

Name:   Reynaldo Reyes _____

       Name: _____

     Print Name

          Print Name

Title:   CEO _____

       Title: _____

Date:   08/23/2018 _____

       Date: _____

4846-8779-1888,

Rev 1/2/2018